UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| LIBERTY SURPLUS INSURANCE CORPORATION, a New Hampshire Corporation, | Case No.: |
| Plaintiff, | Judge: |
| v. | |
| PANZICA CONSTRUCTION COMPANY, an Ohio Corporation; JLJI ENTERPRISES, INC., an Ohio Corporation; and PANZICA SPECIAL PROJECTS GROUP, an Ohio entity, | **COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES IN THE FORM OF RECOUPMENT OF UNCOVERED DEFENSE FEES AND COSTS** |
| Defendants. | |

Liberty Surplus Insurance Corporation ("LSIC"), for its Complaint for Declaratory Judgment and Damages against Panzica Construction Company ("Panzica") and Panzica Special Projects Group ("PSPG"), and for Declaratory Judgment against JLJI Enterprises, Inc. ("JLJI"), states as follows:

## THE PARTIES

1.      LSIC is an insurance corporation organized and existing under the laws of the State of New Hampshire, with its principal place of business in Massachusetts.  LSIC is authorized to and is conducting business in the State of Ohio.

2.      Panzica is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Cleveland, Ohio.

3.      PSPG is a subdivision of Panzica, and has its principal place of business in Cleveland, Ohio.[1]

4.      JLJI is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Euclid, Ohio.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 (a) because diversity of citizenship exists between plaintiff LSIC on the one hand, and defendants Panzica, JLJI and PSPG on the other, and the amount in controversy exceeds $75,000.00, including amounts expended by LSIC that LSIC seeks to recover.

6.      This Court has personal jurisdiction over Panizca because Panzica is a citizen of the State of Ohio with its principal place of business in Cleveland, Ohio.

7.      This Court has personal jurisdiction over PSPG because PSPG is a subdivision of Panzica, without an independent corporate existence, and has its principal place of business in Cleveland, Ohio.

8.      This Court has personal jurisdiction over JLJI because JLJI is a citizen of the State of Ohio with its principal place of business in Euclid, Ohio.

9.      The Court may declare the rights and other legal relations of LSIC, Panzica, PSPG, and JLJI pursuant to 28 U.S.C. § 2201 because an actual controversy exists between them within the jurisdiction of the Court.

10.     Venue is appropriate pursuant to 28 U.S.C § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District, including procurement of

---

[1] Collectively, Panzica and PSPG are referred to as the "Panzica entities."

the insurance policy at issue, and further, the defendants Panzica, PSPG and JLJI have their principal place of business in this District.

## BACKGROUND

**A.      The Market Square Development**

11.     Panzica was the general contractor on a building project located 2021 W. 25th Street in Cleveland, Ohio formerly known as "Market Square" and now known as "Intro Cleveland" or "INTRO" (the "Development").

12.     The Development's owner, at all relevant times, was Ohio City Legacy, LLC ("Owner").

13.     On information and belief, construction of the Development began in 2020.

**B.      Soundproofing Claim**

14.     On or about July 31, 2020, Panzica executed a subcontract with JLJI, under which JLJI undertook various construction obligations in relation to the Development, including the installation of soundproofing material in the demising walls between units of the Development. According to the Owner, both Panzica and PSPG had obligations to supervise and oversee JLJI's work, including installation of soundproofing material.

15.     Certificates of Occupancy were issued by the City of Cleveland in relation to the Development in May 2022, but upon information and belief, no Certificate of Completion has been issued in relation to the Development.

16.     On information and belief, at some point prior to January 20, 2023, Panzica became aware of reports of excess noise travelling between units, through the demising walls.

17.     Testing was performed on the demising walls of the Development and it was discovered that soundproofing insulation had not been adequately installed in the demising walls of the Development.

3

18.     Subsequently, Panzica undertook an evaluation of repairs necessary to correctly reconstruct the walls in relation to the soundproofing issues (hereinafter, "Soundproofing Claim"), which would consist of drywall removal, installation of sound insulation in demising walls, replacement of drywall, and wall repainting.

19.     In May 2023, Panzica created or was provided two different repair plans with corresponding cost estimates.  The cost of either repair plan significantly exceeds the jurisdictional requirement of $75,000.

**C.      Rooftop Claim**

20.     During the course of construction of the Development, Panzica became aware of damage to the rooftop weatherproofing membrane(s) at the Development in various locations.

21.     Upon information and belief, the Owner alleged that damage to the rooftop weatherproofing membrane(s) occurred due to various subcontractors dropping materials on the membrane(s), walking on the membrane(s) while unprotected, and/or other activities of Panzica and/or Panzica's various subcontractors while they worked on the Development.

23.     Upon notice by the Owner of the purported damage (the "Rooftop Claim"), Panzica remediated the purported damage during the course of construction of the Development.

22.     Panzica alleges that JLJI is implicated in contributing to the damage alleged in the Rooftop Claim and is obligated to reimburse Panzica for a portion of the expense incurred to remediate in relation to the Rooftop Claim.

**C.      The Liberty Policy**

23.     Liberty issued to Panzica a Commercial General Liability Policy under number 1000402403-01, effective March 17, 2020 to September 16, 2022 ("Policy").  The Policy provides in relevant part:

<div align="center">

**SECTION I –COVERAGES**

</div>

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE
LIABILITY**

**1.      Insuring Agreement**

    a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

…

**2.      Exclusions**

This insurance does not apply to:

…

    **j.      Damage To Property**

        "Property damage" to:

        ...

        (6)      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

        ...

        Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

…

    **m.      Damage To Impaired Property Or Property Not Physically Injured**

        "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

<div align="center">

5

</div>

(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*        *        *

## SECTION IV – CONDITIONS

a.     **Primary Insurance**[2]

This insurance is primary except when Paragraph b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph c. below.  However, only with respect to the Named Insured(s) under this Policy, and except when b. below applies, we will not seek contribution from any other Commercial General Liability insurance available to you where you are also a Named Insured.

b.     **Excess Insurance**

(1)     This insurance is excess over:

(a)     Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i)     That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

*        *        *

## SECTION V – DEFINITIONS

…

8.     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

---

[2] As modified by endorsement.

a.      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

...

16.     "Products-completed operations hazard":

a.      Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)    Products that are still in your physical possession; or

(2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)    When all of the work called for in your contract has been completed.

(b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.      Does not include "bodily injury" or "property damage" arising out of:

(1)    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

7

>     (2)        The existence of tools, uninstalled equipment or abandoned or unused materials; or
>
>     (3)        Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17.     "Property damage" means:

> a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

...

22.     "Your work":

> a.    Means:
>
> > (1)        Work or operations performed by you or on your behalf; and
> >
> > (2)        Materials, parts or equipment furnished in connection with such work or operations.
>
> b.    Includes:
>
> > (1)        Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
> >
> > (2)        The providing of or failure to provide warnings or instructions.

\*       \*       \*

**EXCLUSION –DAMAGE TO THE PROJECT DURING THE COURSE OF CONSTRUCTION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to:

1.      Any "property damage" at or to any project insured under this policy during the course of construction until the project is completed.

2.      Any obligation to investigate, settle or defend or indemnify any person any claim or "suit" arising out of, or related in any way, either directly or indirectly to any "property damage" at or to the project during the course of construction until the project is completed.

Solely for the purpose of this endorsement:

Construction includes, but is not limited to, construction, renovation, repair, remodel, rehabilitation, demolition, excavation or landscaping.

Project includes, but is not limited to, buildings or structures and any supplies, materials or equipment used in connection with the project.

<div align="center">*    *    *</div>

<div align="center">**NAMED INSURED**</div>

Item 1 Named Insured is hereby amended on the Policy Declarations Page to include the following:

1.      The Named Insured as indicated on the Policy Declarations.

2.      All "enrolled" contractors and subcontractors.

As used in this endorsement, "enrolled" or "enrollment" means the authorized participation in the Owner or Contractor Controlled Insurance Program for the project designated in the policy, as confirmed by and commencing at the earlier of the following:

1.      The signing of a written contract or agreement by a Named Insured for work that is part of the project designated in the policy, if such contract or agreement stipulates "enrollment"; or

2.      The issuance of certificate evidencing "enrollment" by the Owner or Contractor Controlled Insurance Program Administrator or by someone authorized by the Administrator to issue such certificates.

<div align="center">*    *    *</div>

**C.**      **The Arbitration Demand and LSIC's Position**

24.      On or about January 20, 2023, Panzica first provided notice to LSIC of the Soundproofing Claim.

<div align="center">9</div>

25.     On or about April 13, 2023, the Owner issued a Demand for Arbitration with the American Arbitration Association and Request for Mediation (collectively, "Arbitration Demand"), concurrently, to Panzica, PSPG, and JLJI.

26.     The Arbitration Demand was not tendered to LSIC until June 19, 2023.

27.     In addition to Panzica, JLJI qualifies as a "Named Insured" under the Policy as an "enrolled" contractor as defined in the "Named Insured" endorsement.

28.     Based on the representation that PSPG is a subdivision of Panzica and not a separate corporate entity, PSPG also qualifies as a "Named Insured" under the Policy.

29.     The Arbitration Demand contends that Panzica, PSPG and JLJI are liable for repair costs and consequential damages relating to the Soundproofing Claim.

30.     The Arbitration Demand contends that Panzica and PSPG are liable for repair costs and consequential damages relating to the Rooftop Claim.

31.     In turn, Panzica alleges that JLJI is liable for some portion of the repair costs and consequential damages relating to the Rooftop Claim.  However, the Arbitration Demand itself limits claims against JLJI to the Soundproofing Claim.

32.     The Arbitration Demand also contends that the Panzica entities are liable for repair costs and consequential damages in relation to certain other claims.

33.     In particular, the Arbitration Demand alleges that Panzica is liable for failures in project management, including but not limited to alleged failures in preparation, quality control and planning, which "manifested itself in almost all building systems, but particularly in the areas of building envelope, lighting and interior finishes."

34.     The Arbitration Demand also alleges that Panzica is liable for "[l]eaks in the building envelope" at the Development, which allegedly caused damage and required repair, and

10

alleges that Panzica and PSPG are liable for failures of temporary weatherproofing, which provided "ineffective rain and water barriers that simply re-directed water within the partially completed structure instead of away from it."  Collectively, all the claims in the Arbitration Demand are referred to herein as the "Claims."

35.     On June 13, 2023, before LSIC received the tender of the Arbitration Demand, LSIC issued a coverage position letter to Panzica in relation to the Soundproofing Claim and another, earlier claim arising from alleged leaks from an 8th Floor pool into units below (the "Pool Leak Claim").  The Pool Leak Claim is not at issue in this Complaint or the Arbitration Demand.

36.     Through the June 13, 2023 coverage position letter, LSIC informed Panzica that the Policy potentially provided coverage for the Pool Leak Claim and that LSIC would handle the Pool Leak Claim under a complete reservation of rights.  At the same time, LSIC informed Panzica that the Soundproofing Claim was excluded from coverage.

37.     LSIC issued a supplemental coverage position letter to the Panzica entities on August 18, 2023 that addressed the Arbitration Demand.  LSIC explained through the supplemental coverage position letter to the Panzica entities that LSIC agreed to defend the Panzica entities subject to a reservation of rights in relation to the Arbitration Demand, as the Panzica entities claimed LSIC had a duty to defend the Arbitration Demand, but LSIC advised that it reserved the right to seek recovery of all defense fees and costs incurred in relation to uncovered claims.

38.     LSIC issued a coverage position letter to JLJI on August 18, 2023 that addressed the Arbitration Demand.  LSIC explained through the coverage position letter that the Policy did not provide coverage to JLJI in relation to the Arbitration Demand, which only implicated JLJI on the Soundproofing Claim, and thus LSIC denied coverage.

39.     After LSIC issued its August 18, 2023 letter to JLJI, LSIC was informed that Panzica has also implicated JLJI in other claims, though not alleged in the Arbitration Demand.

40.     Consequently, on or about September 22, 2023, LSIC issued a supplemental position letter to JLJI, withdrawing its denial of coverage, and agreeing to investigate the Arbitration in relation to JLJI under a complete reservation of rights under the Policy and the law.

41.     Subsequently, counsel for JLJI confirmed that JLJI was implicated in relation only to the Soundproofing Claim and Rooftop Claim.

42.     Thereafter, LSIC issued a second supplemental position letter to JLJI, through which LSIC denied coverage to JLJI in relation to the Arbitration demand, as the only two claims alleged against JLJI in the Arbitration demand are the Soundproofing Claim and Rooftop Claim, neither of which is covered under the LSIC Policy.

## COUNT I – DECLARATORY RELIEF
### As to All Defendants, The Claims Do Not Reflect "Property Damage"

43.     LSIC incorporates the allegations contained within paragraphs 1 through 42 above as if fully set forth here.

44.     LSIC contends that it has no duty to defend or indemnify under the Policy in relation to the Claims that do not reflect "property damage" as defined under the Policy, including the Soundproofing Claim.

45.     Defendants contend that all Claims, including the Soundproofing Claim and the Rooftop Claim, implicate "property damage" as defined in the Policy, and thus LSIC has an obligation to defend and indemnify all Claims.

46.     An actual and justiciable controversy has thus arisen between LSIC and the Defendants.  The controversy is ripe for resolution through a declaratory judgment, which will

afford complete relief between LSIC on the one hand and the Panzica entities and JLJI on the other.

<div align="center">

**COUNT II – DECLARATORY RELIEF**
**As to All Defendants, Coverage for the Soundproofing Claim is Excluded Under**
**"Damage To Impaired Property Or Property Not Physically Injured" Exclusion**

</div>

47.     LSIC incorporates the allegations contained within paragraphs 1 through 46 above as if fully set forth here.

48.     LSIC contends that the "Damage To Impaired Property Or Property Not Physically Injured" exclusion in the Policy removes an obligation to defend or indemnify in relation to the Soundproofing Claim.

49.     The Panzica entities and JLJI disagree and contend that LSIC is obligated to defend and indemnify them in relation to the Soundproofing Claim.

50.     An actual and justiciable controversy has thus arisen between LSIC, the Panzica entities, and JLJI.  The controversy is ripe for resolution through a declaratory judgment, which will afford complete relief between LSIC on the one hand and the Panzica entities and JLJI on the other.

<div align="center">

**COUNT III – DECLARATORY RELIEF**
**As to All Defendants,**
**Coverage for All Claims is Excluded Because the Development Was Not Completed**

</div>

51.     LSIC incorporates the allegations contained within paragraphs 1 through 50 above as if fully set forth here.

52.     The Policy does not provide coverage for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it" outside the "products-completed operations hazard."   To the extent the Development had not been completed at the time any particular Claim was alleged, coverage for such Claims is excluded.

<div align="center">13</div>

53.     In addition, and independently, through endorsement the Policy excludes coverage for "property damage" "at or to any project insured under this policy during the course of construction until the project is completed."  To the extent the Development had not been completed when any particular Claim was alleged, coverage for such Claims is excluded.

54.     The Panzica entities and JLJI disagree and contend that LSIC is obligated to defend and indemnify them in relation to the Claims, including the Soundproofing Claim and Rooftop Claim, regardless of when the Claims were alleged.

55.     An actual and justiciable controversy has thus arisen between LSIC, the Panzica entities and JLJI.  The controversy is ripe for resolution through a declaratory judgment, which will afford complete relief between LSIC on the one hand and the Panzica entities on the other.

**COUNT IV**
**LSIC is Entitled to Recoup Uncovered Defense Expenditures**

56.     LSIC incorporates the allegations contained within paragraphs 1 through 55 above as if fully set forth here.

57.     LSIC agreed to defend the Panzica entities in relation to the Claims in arbitration, including the Soundproofing Claim, subject to reservation of rights, including a right to recover all defense fees and costs incurred in defending Claims that are not covered under the Policy.

58.     LSIC is entitled to reimbursement of defense fees and costs incurred in defending the Panzica entities in relation to Claims that are not covered under the Policy in the amount proven at the time of trial.

**PRAYER FOR RELIEF**

WHEREFORE, LSIC asks that the Court:

A.     Adjudicate and determine the rights and obligations of the parties under the Policy as set forth herein;

14

B.      Find and declare that LSIC has no obligation to defend or indemnify the Defendants in relation to the Claims, because the Claims do not implicate "property damage" as defined in the Policy;

C.      Find and declare that LSIC has no obligation to defend or indemnify the Defendants in relation to the Soundproofing Claim, because the exclusion titled "Damage To Impaired Property Or Property Not Physically Injured" in the Policy excludes coverage for Soundproofing Claim;

D       Find and declare that LSIC has no obligation to defend or indemnify the Defendants in relation to the Claims, including the Rooftop Claim, because, as the Development had not been completed, coverage for the Claims, including the Rooftop Claim, is excluded;

E.      Find and declare that, to the extent that any of the Claims, including the Soundproofing Claim and/or Rooftop Claim, represents an uncovered claim, LSIC has no duty to indemnify the Defendants in relation to the uncovered claim or claims;

F.      Find and declare that, to the extent that any of the Claims, including the Soundproofing Claim and/or Rooftop Claim, represents an uncovered claim, LSIC has no duty to defend the entities in relation to the Claims, and thus LSIC is entitled to reimbursement for all defense fees and costs incurred by LSIC in defense of any uncovered Claims; and

G.      Grant LSIC any and all further relief that this Court may deem equitable and just.

Dated:  November 15, 2023

<div style="margin-left:50%">

s/ Patrick Fredette
_____
Patrick Fredette (80523)
Christopher Ryan (84607)
McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP
Scripps Center, Suite 1050
312 Walnut Street
Cincinnati, Ohio 45202
(513) 762-7520

*Attorneys for Liberty Surplus Insurance
Corporation*

</div>

9271880.1